**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br>Plaintiff,<br>- against -<br>RICO MEXICAN TACOS BAR & RESTAURANT, INC. d/b/a RICO MEXICAN TACO BAR, BEDITZA CADILLO, JOSE L. CADILLO,<br>Defendants. | CASE NO.: 2:26-cv-07028 |

**COMPLAINT**

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff"), by and through its attorneys, for its Complaint against Defendants Rico Mexican Tacos Bar & Restaurant, Inc. d/b/a Rico Mexican Taco Bar, Beditza Cadillo, and Jose L Cadillo ("Defendants"), hereby alleges as follows:

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this civil action is brought under the Communications Act of 1934, as amended, 47 U.S.C. § 553 and 47 U.S.C. § 605.

2. Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

THE PARTIES

3. Plaintiff, Joe Hand Promotions, Inc. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 213 W. Street Road, Feasterville, Pennsylvania 19053. Plaintiff held the exclusive commercial license to distribute and

authorize the public display of the pay-per-view broadcast of *Canelo Álvarez vs. Edgar Berlanga,* including all undercard bouts and commentary, telecast on September 14, 2024 (the "Program") for businesses such as the business made the basis of this case.,

4. Upon information and belief, Defendant Rico Mexican Tacos Bar & Restaurant, Inc.:

a. is a Pennsylvania corporation;

b. is a business that conducts business in the Commonwealth of Pennsylvania;

c. conducted business as Rico Mexican Taco Bar on the date of the Program;

d. operates, maintains and controls the establishment known as Rico Mexican Taco Bar located at 2632 E. Lehigh Avenue, Philadelphia, PA 19125 (the "Establishment"); and

e. operated, maintained and controlled the Establishment on the date of the Program.

5. Upon information and belief, Defendant Beditza Cadillo is an individual residing in the Commonwealth of Pennsylvania. On the date of the Program, Defendant Beditza Cadillo:

a. operated, maintained, and controlled the Establishment;

b. had full managerial control over, authorized, and directly participated in and/or assisted in the Establishment's unauthorized exhibition of the Program;

c. was an owner of the entity owning and operating the Establishment;

d. was a member, manager, officer, director, shareholder and/or principal of the entity owning and operating the Establishment;

e. had a right and ability to supervise the activities of the Establishment; and

f. had an obvious and direct financial interest in the activities of the Establishment.

6. Upon information and belief, Defendant Jose L. Cadillo is an individual residing in the Commonwealth of Pennsylvania. On the date of the Program, Defendant Jose L. Cadillo:

a. operated, maintained, and controlled the Establishment;

b. had full managerial control over, authorized, and directly participated in and/or assisted in the Establishment's unauthorized exhibition of the Program;

c. was an owner of the entity owning and operating the Establishment;

d. was a member, manager, officer, director, shareholder and/or principal of the entity owning and operating the Establishment;

e. had a right and ability to supervise the activities of the Establishment; and

f. had an obvious and direct financial interest in the activities of the Establishment.

FACTS

7. Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial, non-residential establishments including bars, restaurants, clubhouses, shops, and similar locations. Over the years, Plaintiff has invested a considerable amount of time and money in building a loyal customer base and retaining customers.

8. By written agreement, Plaintiff was granted the sole and exclusive license to distribute and authorize the public display of the Program to businesses such as the Establishment. The Program broadcast originated via satellite uplink and was subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program.

9. Plaintiff entered into subsequent agreements with various commercial establishments in the Commonwealth of Pennsylvania that, in exchange for a fee, allowed them to exhibit the Program to their patrons. In consideration of the aforementioned agreements, Plaintiff expended substantial monies to market, advertise, promote, administer, and transmit the Program to those establishments in the Commonwealth of Pennsylvania.

10. The Program was legally available to the Defendants for exhibition in the Establishment only after paying a commercial sublicense fee for the Program to Plaintiff, which fee was determined by the capacity of the Establishment. Defendants, however, chose not to contract with Plaintiff and pay the proper commercial sublicense fee to Plaintiff. Instead, Defendants, themselves and/or through their agents, servants, and/or employees, took affirmative steps to circumvent the commercial sublicensing requirement and unlawfully obtained the Program via a satellite signal or, in the alternative, via a cable signal, whether by misuse of television services, internet, or other devices.

11. In an effort to avoid paying the proper commercial sublicense fee to Plaintiff, some methods used by commercial locations to unlawfully obtain the broadcast of the Program include, but are not limited to, the illegal interception and/or receipt of the Program via satellite signal or cable signal by:

- Intercepting and redirecting cable or satellite service from a nearby residence,
- Registering their business location as a residence,
- Moving a cable or satellite receiver from a residence to their business,
- Obtaining the Program in violation of the terms of their television service provider agreement, and/or
- Exploiting restricted online access to the Program by streaming the Program over the internet through a limited number of legitimate online distributors offering the Program only for *non-commercial use*.

12. Legitimate *non-commercial* distributors of the Program clearly limit use of their service or online application to residential, personal, and/or non-commercial use only. Undeterred, commercial locations ignore the terms and conditions, agreements, and online application restrictions of legitimate *non-commercial* distributors and obtain the Program via satellite signal or via cable signal, unscrambling the signal of the Program by purchasing the Program for viewing

on a personal device or in a residence for far less than a proper commercial license would cost, then proceed to link the signal to the establishment's television screen(s) to unlawfully exhibit the Program commercially.

13. Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial sublicense. Defendants knew, or should have known, the interception and/or receipt and exhibition of the Program at their Establishment was not properly authorized.

14. The broadcast of the Program at the Establishment was not for private viewing and was not for residential, non-commercial purposes. The broadcast of the Program at the Establishment was advertised on social media. The Establishment sold food and/or drinks on the date and during the broadcast of the Program. The public display of the Program at the Establishment was to entice patrons to the Establishment to spend money while viewing the Program.

15. Defendants intentionally pirated or assisted in the intentional piracy of the Program for the purpose of their own economic gain. Defendants exhibited the Program for the commercial purposes of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights.

16. Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit the Program in the Establishment.

17. In addition, by virtue of their position(s) as it relates to the Establishment, Defendants Beditza Cadillo and Jose L. Cadillo had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all relevant times.

18. At the time of the wrongful conduct described herein, Defendants' agents, servants, and employees were in fact Defendants' agents, servants, and employees and acting within the scope of their employment and authority as Defendants' agents, servants, and employees.

SATELLITE [47 U.S.C. § 605] AND CABLE [47 U.S.C. § 553] PIRACY

19. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

20. Defendants' unauthorized exhibition of the Program was accomplished through the interception and/or receipt of a satellite signal or, in the alternative, through a cable signal. Defendants' violation was willful and for purposes of commercial advantage or private financial gain.

21. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 605. By reason of Defendants' violation of 47 U.S.C. § 605, Plaintiff has standing and capacity to bring a private right of action.

22. Pled in the alternative, Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate 47 U.S.C. § 553, and by virtue of same, Plaintiff has standing and capacity to bring a private right of action.

23. Defendants' wrongful actions, in connection with the unauthorized exhibition of the Program, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 or 553.

24. Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 47 U.S.C. § 605 or, alternatively, pursuant to 47 U.S.C. § 553.

PRAYER

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against each Defendant, jointly and severally, as follows:

a. for statutory damages, in the discretion of this Court, of up to the maximum amount of $110,000.00 for each willful violation of 47 U.S.C. § 605, or alternatively, for statutory damages, in the discretion of this Court of up to the maximum amount of $60,000.00 for each willful violation of 47 U.S.C. § 553;

b. for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to § 553(c)(2)(C); and

c. for such other and further relief to which Plaintiff may be entitled.

Respectfully,

Dated: September 14, 2026

By: /s/ Ryan R. Janis

Ryan R. Janis, Esq.
Bar No. 307705
JEKIELEK & JANIS
203 E. Pennsylvania Blvd.
Feasterville, PA 19053
T: 215-337-4860
F: 267-386-2167
ryan@jj-lawyers.com

Attorneys for Plaintiff
Joe Hand Promotions, Inc.